**Donald R. PHILLIPS, Movant–Appellant,**

v.

**STATE of Missouri, Respondent–Respondent.**

No. 27405.

Missouri Court of Appeals,
Southern District,
Division Two.

Feb. 15, 2007.

362

Mark A. Grothoff, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen. and Evan J. Buchheim, Assistant Attorney General, Jefferson City, for respondent.

PHILLIP R. GARRISON, Judge.

Donald R. Phillips ("Movant") appeals the denial of his Rule 29.15[1] post-conviction relief motion after an evidentiary hearing. Movant contends that he was denied the right to represent himself at trial, and that he received ineffective assistance of counsel. We affirm.

We affirmed Movant's conviction on direct appeal in *State v. Phillips,* 134 S.W.3d 54 (Mo.App. S.D.2004). We recite the facts as related in that opinion without further citation.

On February 22, 2002, Movant met with Michael Croy ("Croy") and Jason Lovell ("Lovell") at a car wash in Fisk, Missouri, and the three men discussed plans to burglarize Bud's Country Store, steal anhydrous ammonia, and "make some dope" (manufacture methamphetamine). The three men ingested methamphetamine while they were together.

From the car wash, the three men drove to the convenience store on T Highway in Butler County in Croy's vehicle. They parked the vehicle, a red Oldsmobile Achieva, by a shed close to the store, walked toward the store, and watched a truck leave. Movant entered the building by picking the lock on one of the doors. Alarm bells rang when the door opened.

Soon after Movant entered the store, Lovell, who was sitting outside the building along with Croy, saw the owner of the convenience store, Bud Ayers ("Ayers"), pull up in his vehicle while Movant was still in the store. Lovell and Croy ran back to the vehicle and heard two shots.

Movant returned to the car shortly after Lovell and Croy saying, "It was kill or be killed." As Croy drove the three back to Fisk, Movant told them, "No one better say nothing of this or else." As they were driving, Lovell noticed that Movant had some money and receipts in his hands.

At approximately 6:52 p.m. on February 22, 2002, the Butler County Sheriff's Department received a call from an alarm company that the alarm was sounding at the convenience store. A deputy who was dispatched to the scene saw a white pickup parked in front of one of the doors to the store, with its motor running and lights on, and the driver's side door standing open. When the deputy entered the store, he saw the light on in a back office. The deputy went into the office and discovered Ayers' body. Ayers had been shot with a .12 gauge shotgun and had a wound to the chest that caused his death.

People living in the vicinity of the convenience store reported hearing two gun-

**1.** All references to rules are to Missouri Rules of Criminal Procedure (2005) and all references to statutes are to RSMo (2000), unless otherwise indicated.

shots in quick succession. Also, Jerry Colter ("Colter") informed the police that while driving near the store he saw a pickup in the parking lot of the convenience store and was subsequently passed by a red car traveling "real fast" that nearly "bl[ew][him] off the highway."

The police eventually interviewed Lovell and Croy, based partly on a tip that Lovell had attempted to purchase a gun, saying Movant and Croy had killed Ayers and were now threatening Lovell's life. Movant had also threatened Croy, shooting at him twice after the murder. In initial interviews with the police, Lovell and Croy denied any involvement with the crimes. Later, however, both admitted their involvement. Lovell and Croy each entered into agreements with the State in exchange for their cooperation and testimony.

While being held in the Mississippi County Jail, Movant spoke to another inmate, and told the inmate of his involvement in the burglary and murder. Movant told the inmate that he and two others had gone to rob a store and the owner interrupted them, and that they shot the owner with the owner's shotgun.

Movant was charged with one count of murder in the second degree, in violation of Section 565.021, armed criminal action, in violation of Section 571.015, and burglary in the first degree, in violation of Section 569.160. Following a jury trial, he was convicted on all counts and was sentenced as a prior and persistent offender to consecutive sentences of life imprisonment, thirty years, and fifteen years, respectively.

Movant filed a pro se motion to vacate, set aside, or correct judgment or sentence, pursuant to Rule 29.15, which was later amended by appointed counsel. After an evidentiary hearing, the motion court entered its findings of fact and conclusions of law denying Movant's motion. Movant now appeals.

■ Appellate review of the denial of a Rule 29.15 motion is "limited to a determination of whether the findings and conclusions of the trial court are clearly erroneous." Rule 29.15(k); *Maclin v. State*, 184 S.W.3d 103, 108 (Mo.App. S.D.2006). A motion court's findings are presumed correct. *Worthington v. State*, 166 S.W.3d 566, 572 (Mo. banc 2005). They are clearly erroneous only when, after reviewing the entire record, this court is left with the definite and firm impression that a mistake has been made. *Maclin*, 184 S.W.3d at 108.

■ In his first point, Movant claims the motion court clearly erred in denying his Rule 29.15 motion because he was denied the right to self-representation and due process as guaranteed by the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and Article I, sections 10 and 18(a) of the Missouri Constitution. The State asserts that this claim is not cognizable in a Rule 29.15 motion because it involves trial court error that was known to Movant and which could and should have been raised on direct appeal. The State's claim has merit.

■ A post-conviction motion is not a substitute for a direct appeal. *State v. Tolliver*, 839 S.W.2d 296, 298 (Mo. banc 1992). A Rule 29.15 motion cannot be used to obtain review of matters which were or should have been raised on direct appeal. *Id.* "Issues that could have been raised on direct appeal—even if constitutional claims—may not be raised in post[-]conviction motions, except where fundamental fairness requires otherwise and only in rare and exceptional circumstance." *Id.* A claim of denial of the right to self-representation and due process is not cognizable in a post-conviction pro-

ceeding where it could have been raised on direct appeal. *See State v. Franklin*, 854 S.W.2d 438, 444 (Mo.App. W.D.1993); *Henderson v. State*, 786 S.W.2d 194, 196–97 (Mo.App. E.D.1990).

Movant has not shown, and we do not find, rare and exceptional circumstances exist in this case. Movant appealed his conviction and did not raise the issue of denial of his right to self-representation and due process. Since he did not raise the issue on direct appeal he is precluded from raising it in a Rule 29.15 motion.

■ Furthermore, even if the issue was cognizable in a post-conviction proceeding, the record clearly supports the motion court's denial of Movant's claim. Movant's entire claim is that he was denied the right to represent himself because he sent a letter to his public defender Shawn Boyd ("Boyd") stating that Boyd was "off the case," and he sent a letter to the judge saying Movant was "representing [himself] in this case not [Boyd] from the Pub. Def. Office … He is not my attorney and therefor [sic] he can't file a motion for me."

■ In order to waive counsel and represent himself a defendant must do so explicitly and unequivocally. *State v. Hampton*, 959 S.W.2d 444, 447 (Mo. banc 1997). "A court must indulge in every reasonable presumption against a [defendant's] waiver of his right to counsel … and require the defendant to make a knowing, intelligent, voluntary, and unequivocal request before concluding that he has waived his right to counsel and invoked his right to represent himself." *Id.* (internal quotations and citations omitted).

The motion court found that Movant never unequivocally waived his right to counsel, but rather wanted different counsel assigned. The letter to Boyd was received on October 30, 2002, and the letter to the judge was received December 3, 2002. On February 14, 2003, Movant filed a pro se motion for change of counsel which the court denied. In this motion, Movant could have unequivocally waived counsel and stated that he was representing himself. Instead, he asked for new counsel. This shows that even after the letters were sent and received Movant still wanted counsel, just not Boyd. Therefore, the record supports the finding of the motion court that both letters express Movant's frustration with Boyd and can be read as requesting new counsel not as a waiver of counsel. Point one is denied.

In his second and third points, Movant asserts that the motion court clearly erred in denying his Rule 29.15 motion because trial counsel was ineffective. Movant will prevail on a claim of ineffective assistance of counsel only if he shows by a preponderance of the evidence that (1) counsel failed to exercise the customary skill and diligence of a reasonably competent attorney under similar circumstances and (2) counsel's deficient performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984); *Anderson v. State*, 196 S.W.3d 28, 33 (Mo. banc 2006).

To satisfy the first prong Movant must overcome the presumption that counsel acted competently. *Anderson*, 196 S.W.3d at 33. "Reasonable choices of trial strategy, no matter how ill-fated they appear in hindsight, cannot serve as a basis for a claim of ineffective assistance." *Id.*

To satisfy the second prong Movant needs to show a reasonable probability that but for counsel's unprofessional errors the result of the trial would have been different. *Id.* "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* (quoting

*Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698).

Movant's second point claims that counsel was ineffective for not calling Ken Rodery ("Rodery"), Rachel Rodery ("Rachel"), Rodney Gillihan ("Gillihan"), Mary Ann Graves ("Graves"), and Richard Hasting ("Hasting") (collectively, "the witnesses") during trial. At trial, Lovell and Croy both testified that Movant was riding with them in Croy's red Oldsmobile on the night of the murder. Colter testified for the State that he saw a pickup in the parking lot and was then passed by a red car going very fast. Movant, however, claims that the witnesses would have given testimony indicating the presence of a different vehicle at the crime scene and had the jury heard this testimony a reasonable probability exists that they would have had reasonable doubts about the credibility of the State's witnesses and the overall allegations against Movant.

■■■ To be successful in his claim that counsel was ineffective for failing to call the witnesses Movant must show: (1) trial counsel knew or should have known of the existence of the witnesses; (2) the witnesses could be located through reasonable investigation; (3) the witnesses would testify; and (4) the witnesses' testimonies would have produced a viable defense. *Edwards v. State,* 200 S.W.3d 500, 518 (Mo. banc 2006). Counsel's decision to not call the witnesses is presumed to be trial strategy and will not support Movant's claim unless he can clearly establish otherwise. *Whited v. State,* 196 S.W.3d 79, 82 (Mo.App. E.D.2006). The witnesses' testimonies must unqualifiedly support Movant or the failure to call the witnesses does not constitute ineffective assistance of counsel. *Maclin,* 184 S.W.3d at 109.

■■■ After reviewing the record we agree with the motion court's conclusion that the failure to call the witnesses did not constitute ineffective assistance of counsel. The witnesses' testimonies would not have provided Movant with a viable defense or unqualifiedly supported Movant and the decision not to call the witnesses was a strategic trial decision.

In this case it is undisputed that (1) counsel knew of the witnesses' existence; (2) the witnesses' could be located; and (3) the witnesses would have testified. Thus, the only remaining issue is whether Movant alleges sufficient facts showing that the uncalled witnesses' testimonies would have provided Movant a viable defense.

Rodery would have testified that he was driving seventy mile per hour past Bud's Country Store when he heard gunshots, glanced at the parking lot, and saw two pickup trucks, one of which was maybe red. His daughter, Rachel, was ten years old at the time of this incident and would have testified that she was riding with her father when she heard a gunshot and saw a man with what "looked like" a goatee or beard in the parking lot. Gillihan would have testified that he saw a white car in the parking lot, but he "wasn't really looking." Graves would have testified that she saw a green car by the dumpster in the parking lot and it was there after the police arrived. Finally, Hasting would have testified that he saw a car by the gas pump and he didn't "think it was red," but he "never really … paid a whole lot of attention to it."

None of the witnesses' testimonies would have provided a viable defense. The fact that there may have been other cars in the parking lot of Bud's Country Store is not determinative. The testimony of Lovell and Croy during trial stated that they parked the red car over by a shed close by the store and not in the parking lot. Also, Movant has not produced any evidence showing that any of these other

vehicles that the witnesses allegedly saw were not still parked there when the police arrived. Any cars still present after the police arrived would be irrelevant because they could not have been used by the individuals who committed the offense. Movant has the burden of establishing all grounds for relief by a preponderance of the evidence. *Harris v. State*, 184 S.W.3d 205, 209 (Mo.App. S.D.2006). He has failed to establish that the witnesses would have offered a viable defense.

Movant's claim also fails because even if the witnesses were called they would not have unqualifiedly supported Movant. Four of the five witnesses only got a quick glance at Bud's Country Store's parking lot as they drove by. Their testimonies include statements such as "I think," "wasn't really looking," "looked like," and "glanced." These do not unqualifiedly support Movant. The only witness who got a prolonged look at the parking lot was Graves whose testimony would have revealed that the green car she saw was still there when the police arrived.

▉▉▉ Furthermore, the decision not to call the witnesses was a strategic trial decision. Boyd testified that he repeatedly analyzed the discovery and recalled that the witnesses "wouldn't have helped [the defense] and they could have hurt [the defense] in some instances." Specifically, "Graves ... really hurt [the defense] more than helped," because the green car she saw was still there when the police arrived. She also would have testified that she "saw a red car parked next door [and] I didn't want anybody else getting up there and saying they saw a red car anywhere near that store." "Rodery was just very unsure," and what Gillihan saw was "contemporaneous with the police arriving" so that did not help. Counsel's testimony supports the motion court's finding that the decision not to call the witnesses was

sound trial strategy. "When defense counsel believes a witness' testimony would not unequivocally support his client's position, it is a matter of trial strategy not to call him, and the failure to call such witness does not constitute ineffective assistance of counsel." *Fortner v. State*, 186 S.W.3d 910, 912 (Mo.App. S.D.2006) (quoting *Winfield v. State*, 93 S.W.3d 732, 739 (Mo. banc 2002)). For the foregoing reasons, point two is denied.

▉▉▉ In his third point, Movant claims that counsel was ineffective in failing to object during the State's closing argument. To be successful Movant must show that counsel's objection would have been upheld and that counsel's failure to object resulted in a substantial deprivation of his right to a fair trial. *State v. Clemons*, 946 S.W.2d 206, 228 (Mo. banc 1997). "Generally, failure to object during closing argument is not error, but rather a function of trial strategy." *Id.*

During Movant's closing argument Boyd stated that he had "nothing but the utmost respect for law enforcement," but none of the law enforcement officers presented "physical evidence obtained at the scene showing who did [the] shooting." In direct response to this assertion the State in its closing argument stated:

> And if you think the law enforcement around here, if he says he's got all the respect in the world for them, he doesn't act like it because if you think they would allow somebody to be convicted with no evidence, then you obviously have no faith in law enforcement. That information, every bit of information they had, they tried to corroborate with independent evidence that was a[sic] reliable nature.

Movant states that Boyd was ineffective for not objecting to this statement by the State because it improperly implied that

law enforcement had evidence not presented during the trial which implicated Movant. At the evidentiary hearing Boyd testified that he doesn't "see where [the State's] alluding to them having evidence, other evidence out there that the jury didn't get to hear," and that he didn't interpret the statement as saying, "we've got more evidence that we didn't choose to show you, but I just want you to know it's out there." Therefore, Boyd did not think there was a legal objection to the State's statement. We agree.

Immediately following its statement the State discussed the testimony of Colter who testified that a red car flew past him on the highway. This is an example of the type of "independent evidence" which the State was referring to in the statement. Therefore, read in context, the State's statement refers only to evidence that was before the jury and does not imply that law enforcement had other evidence it did not present.

For this reason, we believe it is highly unlikely that any objection of Boyd would have been upheld. Counsel is not ineffective for failing to make a non-meritorious objection. *Clemons*, 946 S.W.2d at 228. Point three is denied.

After reviewing the entire record we are not left with the definite and firm impression that a mistake has been made. The motion court did not err in denying Movant's Rule 29.15 motion. The judgment of the motion court is affirmed.

BARNEY, and LYNCH, JJ., concur.